UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Valley Bank, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17 CV 04384 |
| v. | ) ) | Judge Edmond E. Chang |
| CROWE HORWATH LLP, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Federal Deposit Insurance Corporation (FDIC-R), as receiver for Valley Bank (Valley), filed this lawsuit against Crowe Horwath LLP, alleging accounting malpractice, gross negligence, and negligent misrepresentation.[1] R. 1, Compl.[2] The claims arise out of Valley's loss of around $21 million, allegedly caused by Crowe's malpractice in auditing the consolidated financial statements of Valley's holding company, River Valley Bancorp, Inc. (RVBI) in 2010 and 2011. *Id.* ¶ 1. Crowe moves to strike, Fed. R. Civ. P. 12(f), the FDIC-R's jury demand and request for punitive damages, arguing that neither the jury demand nor punitive damages are available. R. 17, Def.'s Motion to Dismiss. Crowe also moves to dismiss Counts Two (negligence) and Three (negligent misrepresentation) of the complaint under Federal Rule of Civil Procedure 12(b)(6). *Id.* For the reasons discussed below, the

---

[1]This Court has subject matter jurisdiction under 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.") and 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

motion to strike is denied and the motion to dismiss is granted in part and denied in part.

## I. Background

In deciding a motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). For the years 2010 and 2011, Crowe was the independent auditor of Valley Bank, a full-service bank that engaged in commercial and consumer lending. Compl. ¶¶ 14, 21-22. Valley was a subsidiary of RVBI, a holding company that also held two other banks around the country. *Id.* ¶ 15. Valley's Chairman and CEO, Larry C. Henson, pursued aggressive growth strategies. *Id.* ¶ 16. In April and May 2009, Valley's regulators warned the Board that the bank's financial condition had sharply deteriorated due to the too-aggressive growth strategies. *Id.* ¶ 17. In September 2009, Valley entered into a Cease and Desist Order (Consent Order) with the FDIC, which required Valley to, among other things, maintain specific capital ratios. *Id.* ¶ 18. The Consent Order remained in effect throughout Crowe's audits. *Id.* Henson did not comply with the Consent Order, but rather engaged in a scheme to hide Valley's true financial condition. *Id.* ¶ 19.

In October 2010, Crowe entered into an engagement letter with RVBI, under which Crowe was to conduct audits of RVBI and its subsidiaries, including Valley, for the year-ended December 31, 2010. Compl. ¶ 21. Crowe executed the 2010 audit and issued a Report of Independent Auditors in March 2011. *Id.* In June 2011,

Crowe entered into another engagement letter with RVBI, this time to conduct audits of RVBI and its subsidiaries, including Valley, for a two-year period. *Id.* ¶ 22. Crowe executed the 2011 audit, which included a restatement of Valley's 2010 financial statements, and issued a Report of Independent Auditors in May 2012. *Id.* Crowe started the audit of Valley's 2012 financial statements, but never finished it, because Crowe was terminated after a dispute with Valley over the bank's Allowance for Loan and Lease Losses (ALLL) methodology. *Id.* ¶¶ 23, 65. The 2010 and 2011 reports certified that the financial statements fairly presented Valley's financial position for those years in conformity with Generally Accepted Accounting Principles (GAAP). *Id.* ¶¶ 21-22.

As Valley's external auditor, the FDIC-R alleges, Crowe had a duty to determine whether Valley's financial statements fairly presented the bank's financial position. Compl. ¶ 25. Crowe also had a duty to obtain a reasonable assurance that the financial statements were free from material misstatement due to error or fraud. *Id.* Federal regulations required Valley to be audited by an independent Certified Public Accountant, and Crowe knew that Valley and its regulators would rely on the audit opinions and comparative financial statements that Crowe issued. *Id.* ¶¶ 26-27. The FDIC-R alleges that Crowe knew Valley had inadequate internal controls, ignored known fraud risks in its performance of the 2010 and 2011 audits—even when the risks were realized and identified—and issued unqualified opinions despite knowing about Valley's manipulation of its financial statements. *Id.* ¶¶ 2-3, 5-6, 53. As a result, from 2011 to 2013, Henson was

3

able to continue to originate and fund $21 million in loans that violated the 2009 Consent Order. *Id.* ¶¶ 3, 61, 67. Ultimately, Henson's scheme continued until regulators discovered it and forced Henson to resign in June 2013. *Id.* ¶¶ 3, 24. According to the FDIC-R, if Crowe had performed its audits in accordance with professional standards, then it would not have issued opinions without qualifiers, and Henson's scheme to mask Valley's deteriorating financial condition would have been discovered as much as two years earlier, which would have prevented further harm to the bank. *Id.* ¶¶ 5-7, 67.

After the Illinois Department of Financial and Professional Regulation closed Valley in June 2014, it appointed the FDIC-R as receiver for Valley. Compl. ¶¶ 8, 14. The FDIC-R brings this suit against Crowe, alleging accounting malpractice, gross negligence, and negligent misrepresentation. *Id.* at 21-25. Crowe moves to strike the FDIC-R's jury demand and request for punitive damages, and to dismiss the FDIC-R's gross negligence and negligent misrepresentation claims. Def.'s Mot. to Dismiss. at 1.

## II. Standards of Review

### A. Rule 12(f)

Crowe moves to strike the FDIC-R's jury demand and request for punitive damages under Rule 12(f). R. 18, Def.'s Mot. to Dismiss Br. at 4-7. Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th

4

Cir. 2009). Motions to strike are usually disfavored.³ *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike are appropriate, however, if they expedite litigation, and sometimes striking a jury demand might do that. *See, e.g., Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if the matter bears no possible relation to controversy); *see also DeliverMed Holdings, LLC v. Medicate Pharm. Inc.,* 2012 WL 345380, at *2 (S.D. Ill. Feb. 1, 2012) (noting that the "pending motion to strike, if meritorious, may expedite the case by removing unwarranted jury demands."). Requests for relief may also be stricken when they seek relief that is not recoverable as a matter of law. *Delta Consulting Grp., Inc.*, 554 F.3d at 1142. "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Pavlik v. FDIC*, 2010 WL 3937621, at *1 (N.D. Ill. Oct. 5, 2010) (cleaned up).⁴

### B. Rule 12(b)(6)

Crowe also moves to dismiss the FDIC-R's claims for negligence and negligent misrepresentation under Rule 12(b)(6). Def.'s Mot. to Dismiss Br. at 8-10. Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only

---

³The view disfavoring motions to strike "is generally applied to those motions to strike which attack affirmative defenses." *Parks v. City of Madison, Wis.*, 1991 WL 222210, at *2 (7th Cir. Oct. 22, 1991). This Court's Case Procedures noting strong disfavor for motions to strike is primarily meant to curb needless motions to strike portions of the other side's Local Rule 56.1 statements that should instead be addressed in a response or reply brief.

⁴This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

5

include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

#### A. Motion to Strike

Crowe argues that the FDIC-R's jury demand and request for punitive damages must be stricken because Valley—and the FDIC-R standing in its shoes as

receiver—is a party or third-party beneficiary to the 2010 and 2011 engagement letters and thus is bound by the provisions that waive a jury demand and bar punitive damages. Def.'s Mot. to Dismiss Br. at 4-5; R. 32, Def.'s Reply Br. at 4-10.

**1. A Motion to Strike Is Proper**

At the outset, it is worth noting that a Rule 12(f) motion to strike is a proper procedural vehicle to determine whether the contractual waivers apply to the FDIC-R, because there is no fact dispute that needs pushing off until later. State law governs the enforceability of these contractual provisions. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86-87 (1994) (Section "1821(d)(2)(A)(i) places the FDIC in the shoes of the [failed financial institution] to work out its claims under state law, except where some provision in the extensive framework of FIRREA [the Financial Institutions Reform, Recovery, and Enforcement Act of 1989] provides otherwise"). The parties agree that Illinois supplies the substantive law. Def.'s Mot. to Dismiss Br. at 6 (citing choice-of-law provisions in Def.'s Mot. to Dismiss Br., Exh. A at 5 and Exh. B at 4); R. 29, Pl.'s Resp. Br. at 7. Contractual waivers are rightly decided as matters of law. *See, e.g. Horbach v. Kaczmarek*, 915 F. Supp. 18, 23 (N.D. Ill. 1996), *aff'd,* 288 F.3d 969 (7th Cir. 2002) (citing *Wald v. Chicago Shippers Ass'n,* 529 N.E.2d 1138, 1147-48 (Ill. App. Ct. 1988)). A court may properly strike relief not available to a party as a matter of law. *Delta Consulting Grp., Inc.*, 554 F.3d at 1142. So the Court may strike a jury demand or a request for punitive damages if waived in a contract.[5]

---

[5]Although the Illinois Supreme Court has not specifically articulated the standard for the enforceability of jury trial waivers, it has held that fundamental principles of

## 2. Valley's Status as a Party and Third-Party Beneficiary

Crowe argues that Valley is a party to the 2010 engagement letter. Def.'s Reply Br. at 4-6. Because the letter defines "you" as "River Valley Bancorp, Inc. and Subsidiaries," Crowe contends that Valley is bound by the jury demand and punitive damages waiver provisions, which state, respectively, "YOU AND WE AGREE TO WAIVE A TRIAL BY JURY" and "[a]ny liability of Crowe to you shall not include any punitive, multiple, treble, enhanced, or exemplary damages." *Id.* at 5 (quoting Pl.'s Resp. Br. at 5) (internal citations omitted). Neither party disputes that Valley was a subsidiary of RVBI. Compl. ¶¶ 21-22; R. 21, Def.'s Answer at Resps. to ¶¶ 21-22; Def.'s Reply Br. at 5. Crowe also argues Valley was a signatory to the letter because a RVBI officer signed it on behalf of "the Corporation," which includes subsidiaries in its definition. Def.'s Reply Br. at 6 (quoting Def.'s Mot. to Dismiss Br., Exh. A at 5).

It is true that the plain and ordinary meaning of a contract's text is what determines the *parties*' intent, *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007), but the bottom line remains that "a contract cannot bind a *nonparty*." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (emphasis added). Crowe cites no cases, and this Court has found none, supporting Crowe's assertion that a non-signatory subsidiary is a party to a contract simply because it is included in the definition of

---

contract law govern the enforceability of an arbitration agreement. *JF Enterprises, LLC v. Fifth Third Bank*, 824 F. Supp. 2d 818, 824 (N.D. Ill. 2011) (citing *Melena v. Anheuser–Busch, Inc.,* 847 N.E.2d 99, 106 (Ill. 2006)). It follows that waiving a jury trial cannot be treated more strictly than an agreement to arbitrate—which gives up more rights—and thus the enforceability of jury trial waivers is determined by the ordinary rules of contract law. *Id.* (cleaned up).

"you" in a contract signed by its parent corporation. Def.'s Reply Br. at 5. No Valley officer or director signed the 2010 engagement letter on behalf of Valley. Def.'s Mot. to Dismiss Br., Exh. A at 5. So Valley is not a signatory to the contract and did not agree to the waivers in the engagement letters. The jury demand and punitive damages waivers cannot be enforced against Valley based on this theory.

Crowe next argues that, even if Valley is not a party to the engagement letters, Valley is a third-party beneficiary of both letters, and thus is bound by the waivers. Def.'s Reply Br. at 6-8. Illinois law recognizes that a non-party is a third-party beneficiary to a contract when the contracting parties intended that person to benefit from the contract. *Olson v. Etheridge*, 686 N.E.2d 563, 566 (Ill. 1997). Third-party beneficiary status is determined by the contract's language and from the circumstances surrounding the parties at the time of its execution. *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995). It is clear from the plain language of the engagement letters and the allegations in the complaint that RVBI and Crowe intended Valley, as a subsidiary of RVBI, to benefit from the letters. Compl. ¶¶ 21-22; Def.'s Mot. to Dismiss Br., Exh. A at 1 ("[Crowe] will audit and report on the consolidated financial statements of the Corporation and its wholly owned subsidiaries … ."); Def.'s Mot. to Dismiss Br., Exh. B at 1 (same). The engagement letters sufficiently identify Valley by naming RVBI's subsidiaries as a beneficiary of Crowe's services: a contract for the benefit of a third-party need not identify it by name, so long as the third-party is a member of a class defined in the contract. *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 187 (Ill. 1981). The

9

circumstances also support a holding that the parties intended to benefit Valley: as Valley alleges and Crowe acknowledges, federal regulations, including 12 C.F.R. § 363.3(a), required Valley to be audited by an independent Certified Public Accountant, and Crowe knew Valley and regulators would rely on the audit opinions it issued on Valley's financial statements. Compl. ¶¶ 26-27; Def.'s Ans. at Resps. to ¶¶ 26-27. Because the plain language of the engagement letters and the surrounding circumstances clearly show RVBI and Crowe's intent to benefit Valley, as RVBI's subsidiary, Valley is a third-party beneficiary to the engagement letters. But this is not the end of the analysis on whether the *contractual* waivers apply to the FDIC-R's *tort* claims.

### 3. Valley's Tort Claims

Ultimately, the FDIC-R's accounting malpractice, negligence, and negligent misrepresentation claims are all *tort* claims. As tort claims, they are premised *not* on Valley's status as a third-party beneficiary to the engagement letters, but instead on Crowe's duty to Valley as an intended beneficiary of Crowe's audits under the Illinois Public Accounting Act (IPAA), 225 ILCS 450/30.1. The distinctions between liability under the third-party beneficiary doctrine and the IPAA are subtle, but they make all the difference here.

Under the IPAA, an auditor is liable not only to those in direct privity of contract with it, but also to a third-party if the auditor is "aware that a primary intent of the client was for the [auditor's] professional services to benefit or influence" the third-party. 225 ILCS 450/30.1. Unlike the third-party beneficiary

10

doctrine, which looks to the "language of the contract" to determine the parties' intent to benefit a third party, *XL Disposal Corp.*, 659 N.E.2d at 1316, the IPAA does not require any writing identifying the third-party beneficiary, 225 ILCS 250/30.1; *see Freeman, Freeman & Salzman, P.C. v. Lipper*, 812 N.E.2d 562, 565 (Ill. App. Ct. 2004) ("[W]hen the accountant writes to no one, the plaintiff must show the intent of the client and knowledge of the accountant of that intent.); *Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.*, 667 N.E.2d 543, 547 (Ill. App. Ct. 1996) ("A third party may state a cause of action under the statute even though there is no writing."). Instead, an accountant's liability to a third-party under the IPAA is based on whether the accountant "was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action." 225 ILCS 450/30.1; *see, e.g.*, *Builders Bank v. Barry Finkel and Associates*, 790 N.E.2d 30, 35-37 (Ill. App. Ct. 2003) (allowing bank's malpractice and negligent misrepresentation claims to proceed against accountant who prepared borrower's financial statements because accountant was aware that the bank would use the statements in reviewing borrower's loan request).

Here, the parties do not dispute that that the primary intent of RVBI was for Crowe's 2011 and 2012 audits to benefit Valley, or that Crowe was aware of that intent.[6] Pl.'s Resp. Br. at 5-6; Def.'s Reply Br. at 7-8. Rather, Crowe argues that the

---

[6]The complaint alleges many facts beyond the engagement letters supporting RVBI's intent to benefit Valley and Crowe's awareness of the intent. For example, during Crowe's 2011 Audit, Crowe obtained evidence that "Valley was manipulating the [general valuation allowance] calculation to force Valley's desired result to minimize the required [Allowance for Loan and Lease Losses]." Compl. ¶ 53. In an e-mail exchange between Crowe auditors, one stated Valley "should be required to provide 'air tight support' for its assumptions,"

11

FDIC-R cannot rely on Crowe's liability under the IPAA without binding Valley, as a third-party beneficiary of the engagement letters, to the waivers.[7] Def.'s Reply Br. at 7 n.3. As noted above, there need not be a writing identifying Valley as a beneficiary in order for Crowe to be liable to Valley under the IPAA. Also, importantly, the FDIC-R brings only *tort* claims: it does not assert any breach of contract claims based on its status as a third-party beneficiary to the engagement letters. Compl. at 21-25. Crowe cites only one case in which a third-party beneficiary brought a tort claim and the court enforced an arbitration provision. *Howells v. Hoffman*, 568 N.E.2d 934, 935, 937 (Ill. App. Ct. 1991). But *Howells* is distinguishable. There, the plaintiffs maintained a security account at Merrill

---

which Crowe would have to audit in detail." *Id.* Crowe instead accepted the numbers Valley provided to issue its audit opinion. *Id.* Those allegations (if assumed to be true) demonstrate Crowe's awareness that its audits were benefitting Valley, not just RVBI. Because the parties do not dispute that Crowe was liable to Valley under the IPAA, the Court declines to list all allegations in the complaint supporting RVBI's intent to benefit Valley and Crowe's knowledge of the intent.

[7]Because the engagement letters name RVBI's subsidiaries as intended beneficiaries, Crowe's liability may be limited to RVBI—Crowe's client—and RVBI's subsidiaries. 225 ILCS 450/30.1(2) ("[I]f [the auditor] (i) identifies in writing to the client those persons who are intended to rely on the services, and (ii) sends a copy of such writing or similar statement to those persons identified in the writing or statement, then [the auditor] may be held liable only to such persons intended to so rely, in addition to those persons in privity of contract with [the auditor]."). The complaint is silent as to whether Crowe sent Valley or RVBI's other subsidiaries copies of the 2010 and 2011 engagement letters. Because Valley references the letters in its complaint, Compl. ¶¶ 21-22, 76, presumably Valley obtained a copy of the letters from either RVBI or Crowe. If Crowe sent copies of the letters to Valley and RVBI's other subsidiaries, then Crowe's liability would be limited to RVBI and its subsidiaries. 225 ILCS 450/30.1(2). But if Crowe did not send a copy of the letters to Valley and RVBI's other subsidiaries, and this provision does not apply, then Crowe may be liable to other classes of parties RVBI intended to benefit, such as investors or customers. *Id.*; *see also Chestnut Corp.*, 667 N.E.2d at 545, 547 (plaintiff who invested in corporation based on defendant-accountant's reports and financial statements could bring suit against defendant despite not being in privity of contract with defendant or corporation). Enforcing the contractual waivers against Valley because it is a third-party beneficiary to the contract would put the FDIC-R in a worse position than other unnamed third-parties to whom Crowe may be liable under the IPAA.

Lynch, where the defendant was an account executive. *Id.* at 935. Before the plaintiffs made the investment, they had executed a contract with Merrill Lynch that included an arbitration provision. *Id.* The plaintiffs brought state common-law fraud claims against the defendant for the defendant's sale of the plaintiffs' bonds and reinvestment of the proceeds without the plaintiffs' approval. *Id.* Because the transactions to which the arbitration agreement applied involved interstate commerce, the Federal Arbitration Act, 9 U.S.C. § 2, governed to the exclusion of state law. *Id. Howells* therefore relied on federal law, not Illinois law, to hold that the arbitration provision applied to the plaintiffs' tort claims against the defendant, who was a third-party beneficiary to the contract. *Id.* at 935-937. Crowe does not cite any cases—and this Court has not found any—applying Illinois law and holding that a third-party beneficiary who sues a party to the contract in *tort* is subject to any waivers in the *contract*. Therefore the FDIC-R's tort claims are not subject to the jury trial and punitive damages waivers in the engagement letters.

But the Court will not allow the FDIC-R to have its cake and eat it too: the FDIC-R is essentially disclaiming reliance on the engagement letters as a source of duty for the tort claims.[8] Crowe is free to raise that disavowal down the line to

---

[8]The Court disregards the FDIC-R's use of the word "client" to describe the relationship between Crowe and Valley. *Id.* ¶¶ 25, 69. Labeling Valley as Crowe's client is not a well-pleaded factual allegation this Court must accept as true: there is no privity of contract between Crowe and Valley and thus Valley is not Crowe's "client." *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982) (a non-client, or one who is not in privity with an attorney, may sue the attorney for professional malpractice in some circumstances); *see also* 225 ILCS 450/30.1. Because it is also clear from the FDIC-R's briefs that its tort claims rely on Crowe's liability to it pursuant to the IPAA rather than its status as a third-party beneficiary to the engagement letters, Pl.'s Resp. Br. at 5-6; R. 38, Pl.'s Sur-Reply at 3 n.1,

13

disable the FDIC-R from involving the engagement letters when it wants to, while evading the jury and punitive damages waivers.

For completeness' sake, the Court notes that Crowe had the better of the dispute on whether the jury waiver binds the FDIC-R after *Themas v. Green's Tap, Inc.*, 16 N.E.3d 875 (Ill. App. Ct. 2014). In *Themas*, the plaintiff sued a tavern for an injury sustained at the bar, and demanded a trial by jury. *Id.* at 876. The tavern filed a third-party complaint—without a jury demand—against its insurer. *Id.* The insurer answered and filed a jury demand. *Id.* The plaintiff and the tavern settled, and the tavern assigned the plaintiff its third-party claim against the insurer. *Id.* The insurer then moved to withdraw its jury demand and asked for a bench trial. *Id.* The plaintiff objected, arguing that the jury demand that she filed with the original complaint covered the assigned claim. *Id.* The trial court disagreed, holding that the plaintiff took the claim as she found it: without a jury demand. *Id.* The plaintiff appealed. *Id.* The Illinois Appellate Court reversed, holding that the assignment at issue was for the "claim for damages, not the lawsuit filed in pursuit of that claim." *Id.* at 877. *Themas* is not like the situation at hand. *Themas* was premised on the Illinois Code of Civil Procedure, 735 ILCS 5/2–403(a), not a bargained-for contractual jury waiver or principles of receivership, which is what this case involves.

The Court also notes that it would have rejected the FDIC-R's argument that the FDIC-R, as a receiver, is not subject to defenses otherwise available to

---

the Court disregards the complaint's two references to the engagement letters, Compl. ¶¶ 21-22.

14

defendants. Pl.'s Resp. Br. at 8. The only cases the FDIC-R relies on to support this assertion involve the equitable doctrine of *in pari delicto*. *Id.* Courts refuse to allow the *in pari delicto* defense to be used against statutory receivers because statutory receivers, standing in for a party that may have engaged in wrongdoing, are not *themselves* wrongdoers, but instead are administrative officers of the state that have rights, powers, and duties conferred by statute and that serve the public interest. *McRaith v. BDO Seidman, LLP*, 909 N.E.2d 310, 336 (Ill. App. Ct. 2009); *Nicholson v. Shapiro & Assocs., LLC*, 82 N.E.3d 529, 530 (Ill. App. Ct. 2017), *appeal denied,* 2017 WL 5635649 (Ill. Nov. 22, 2017). The FDIC-R cites no case in which a statutory receiver was able to avoid a bargained-for contractual waiver, like the one here, just because the plaintiff was a receiver.

Because the FDIC-R brings only tort claims based on Crowe's duty to Valley under the IPAA, rather than Valley's status as a contractual third-party beneficiary, the waivers do not apply to Valley and Crowe. The motion to strike is denied.

### B. Motion to Dismiss Counts 2 and 3

Crowe also argues the FDIC-R's claims for negligence (Count Two) and negligent misrepresentation (Count Three) should be dismissed because they are duplicative of the FDIC-R's accounting malpractice claim (Count One). "A duplicative count may be properly dismissed." *DeGeer v. Gillis,* 707 F.Supp.2d 784, 795 (N.D. Ill. 2010) (citing *Nagy v. Beckley,* 578 N.E.2d 1134, 1136 (Ill. App. Ct. 1991)). Claims are considered duplicative if they "are based on the

15

same operative facts and the same injury." *DeGeer*, 707 F. Supp. 2d at 796. Crowe contends that both elements are met for Counts Two and Three.

### 1. Count 2: Negligence

The overlap of the operative facts and Valley's alleged injuries is complete between the FDIC-R's accounting malpractice and negligence claims.[9] Both claims are based on Crowe's duty to Valley as the auditor of Valley's financial statements in 2010 and 2011. Compl. ¶¶ 69, 72-74. The FDIC-R does not state any different standard of care or additional facts in support of its negligence claim, but rather just incorporates the allegations supporting the accounting malpractice claim, and then merely adds that Crowe's conduct amounted to "very great negligence." Compl. ¶ 73. But that is no different from accounting malpractice. And the alleged injury is the same too. Because Count Two relies on an identical standard of care, operative facts, and identical injury to Count One, the negligence claim must be dismissed as duplicative. *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000) ("[D]uplicate claims are not permitted in the same complaint."); *see also Pavilion Hotel Corp. v. Koch*, 2000 WL 51817, at *2 (N.D. Ill. Jan. 14, 2000) (dismissing a breach of fiduciary duty

---

[9]The Court construes Count Two, labeled "Gross Negligence," Compl. at 24, as an ordinary negligence claim because gross negligence is not a recognized cause of action in Illinois. *Merit Ins. Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979) ("Illinois does not recognize gross negligence as an independent ground for recovery.") (citing *Chicago, R.I. & P. Ry. Co. v. Hamler*, 74 N.E. 705 (Ill. 1905)). Under Illinois law, the elements of a negligence claim are: "(1) a duty of care owed by the defendant; (2) a breach of that duty; (3) an injury proximately caused by that breach; and (4) damages." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010) (citing *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007)). Similarly, the elements of a professional negligence claim under Illinois law are: "(1) the existence of a professional relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages." *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006).

claim as duplicative of a negligence claim because the causes of action are supported by the same operative facts and allege the same injury).

It is worth pointing out that the duplicative negligence claim also would present substantial risks if submitted to a jury. First, presenting virtually identical causes of action would only confuse the jury. Second, the jury might award double recovery for the same injury. *See F.D.I.C. v. Chicago Title Ins. Co.*, 2013 WL 791318, at *2 (N.D. Ill. Mar. 4, 2013) (a plaintiff can "recover only once for the same injury"). Third, and most troubling, presenting duplicate claims based on the same operative facts poses the danger of the jury delivering an inconsistent verdict, most likely requiring a new trial. *City of Los Angeles v. Heller*, 475 U.S. 796, 805 (1986) ("[I]f verdicts are genuinely inconsistent and if the evidence might support either of the 'inconsistent' verdicts, the appropriate remedy is ordinarily, not simply to accept one verdict and dismiss the other, but to order an entirely new trial."); *see also Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005) ("A new trial on all claims is the appropriate remedy … in a case in which the jury has returned inconsistent verdicts."). So the negligence claim is dismissed as duplicative of the accounting malpractice claim.

**2. Count 3: Negligent Misrepresentation**

Moving on to negligent misrepresentation, this claim does potentially differ from the accounting malpractice claim. *See, e.g.*, *F.D.I.C. v. Chicago Title Ins. Co.*, 2013 WL 791318, at *2 (N.D. Ill. Mar. 4, 2013) (holding claims not to be duplicative when "[p]laintiff's negligence claim [was] based on an alleged failure to exercise

reasonable care while plaintiff's negligent misrepresentation claim [was] based on misrepresentations or omissions which induced the bank to fund the loans at issue"). Under Illinois law, the elements of professional malpractice and negligent misrepresentation are different, and those different elements potentially provide different theories of recovery.[10] Here, in Count One, the FDIC-R alleges that Crowe committed accounting malpractice by breaching its duty to Valley "to perform its audits and professional services in accordance with applicable standards" and alleges fifteen ways in which Crowe breached its duty. Compl. ¶ 69. In Count Three, the FDIC-R alleges that Crowe falsely reported in its audit opinions issued in 2011 that it "performed its audit in accordance with GAAS [Generally Accepted Auditing Standards] and that the financial statements were free from material misstatement in conformity with GAAP." *Id.* ¶ 77. The FDIC-R also alleges that Crowe made the same misrepresentations in its 2012 audit opinion, and that it also falsely represented it was independent. *Id.* ¶ 78. So the accounting malpractice claim is based on an alleged breach of duty owed to Valley, while the negligent misrepresentation claim is based on misrepresentations about its independence and its compliance with GAAS and GAAP. *Id.* ¶¶ 69, 77-78. To be sure, there is some overlap in the alleged injury: for both counts, the damages comprise the loss that Valley sustained from the alleged breach of duty and the misrepresentations, that

---

[10] *See supra* n.9 for the elements of professional negligence. Under Illinois law, the elements of negligent misrepresentation are: "(1) a false statement of material fact; (2) intention to induce the other party to act; (3) action by the other party in reliance on the truth of the statements; and (4) damage to the other party resulting from such reliance." *Freedom Mortg. Corp.*, 720 F. Supp. 2d at 992 (citing *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218 (Ill. App. Ct. 2007)).

is, the loss sustained from failing to stop Henson's scheme of originating and funding millions of dollars in loans in violation of the Consent Order in 2011, 2012, and 2013. *Id.* ¶¶ 71, 79.

For now, both claims should proceed forward.[11] It will become clearer with more facts whether the FDIC-R's negligent misrepresentation claim has a separate existence from the accounting malpractice claim. Discovery might show that the operative facts and injuries so completely overlap that Court should dismiss the negligent misrepresentation claim at summary judgment or trial. But because the elements do differ, the Court denies (without prejudice) Crowe's motion to dismiss Count Three as duplicative.

## IV. Conclusion

For the reasons discussed above, Crowe's motion to strike is denied. The motion to dismiss the negligence claim is granted, but the claim for negligent misrepresentation remains intact for now.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2018

---

[11]Of course, if both claims proceed to trial and the damages sought are indeed duplicative, then the Court will limit the FDIC-R's recovery.