FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for )
Valley Bank, )
                         )
           Plaintiff, )    No. 17 CV 04384
                         )
     v. )    Judge Edmond E. Chang
                         )
CROWE HORWATH LLP, )
                         )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation (FDIC-R), as receiver for Valley Bank (Valley), filed this lawsuit against Crowe Horwath LLP, alleging accounting malpractice, gross negligence, and negligent misrepresentation.[1] R. 1, Compl.[2] The claims arise out of Valley's loss of around $21 million, allegedly caused by Crowe's malpractice in auditing the consolidated financial statements of Valley's holding company, River Valley Bancorp, Inc. (RVBI) in 2010 and 2011. *Id.* ¶ 1. The parties are in the midst of fact discovery. *See* R. 69, 02/16/2018 Minute Entry. Crowe has moved to compel four categories of documents from the FDIC-R: (1) all documents from the FDIC, in its corporate capacity (FDIC-C), related to Valley Bank in the FDIC-R's possession, and to obtain all other documents related to Valley Bank in the

---

[1] This Court has subject matter jurisdiction under 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.") and 28 U.S.C. § 1331.

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

FDIC-C's possession, conduct a relevance review, and produce those that are relevant to this case; (2) documents collected from third parties as part of the FDIC-R's pre-litigation investigation; (3) unredacted versions of administrative deposition transcripts for all witnesses deposed as part of the FDIC-R's pre-litigation investigation; and (4) documents related to settlements or potential claims against third parties in connection with losses incurred by Valley Bank or related entities. R. 73, Def.'s Mot. Compel at 1-2. The FDIC-R, as well as the FDIC-C and non-party objectors William Gabelmann and Gabelmann & Associates, P.C. (the latter two will be referred to collectively as Gabelmann), argue that the documents are protected by various privileges and agency regulations. R. 93, Pl.'s Resp. Br.; R. 92, FDIC-C's Resp. Br.; R. 91, Gabelmann Resp. Br. For the reasons discussed below, Crowe's motion to compel is granted in part and denied in part.

## I. Background

The FDIC-R brings accounting malpractice and negligence claims against Crowe arising out of Crowe's audits on the consolidated financial statements of Valley Bank and its holding company, RVBI. Compl. at 21-25. Before Valley failed in 2014, the FDIC-C and other regulators performed routine examinations of the bank. *Id.* ¶¶ 17, 24. The FDIC-C regulators eventually discovered that Valley's CEO had engaged in a scheme between 2011 and 2013 to hide the bank's true financial condition, which caused Valley losses totaling around $21 million. *Id.* ¶¶ 1-3. After this scheme was discovered, the Illinois Department of Financial and Professional Regulation closed Valley in 2014 and appointed the FDIC-R as its receiver. *Id.* ¶¶ 8, 14. As receiver of

a failed bank, the FDIC-R has the power to sue in any court of law, and by operation of law succeeded to all rights, titles, and privileges of Valley. *Id.* ¶ 8 (citing 12 U.S.C. §§ 1819, 1821). In this role, the FDIC-R filed this lawsuit against Crowe. *Id.* The Complaint alleges that Crowe was negligent in carrying out its audits and that it improperly issued unqualified audit opinions on Valley's financial statements for the years 2010 and 2011. *Id.* ¶ 7.

The parties have engaged in extensive discovery, but have reached an impasse on the four categories of documents listed above. With regard to the first category of FDIC-C documents, Crowe sought FDIC-C documents that are in the possession, custody, or control of the FDIC-R. R. 83, Exh. 6 at 4. When the FDIC-R refused to produce the documents, Crowe sought them from the FDIC-C by subpoena under Rule 45, R. 83, Exh. 4, and pursuant to 12 C.F.R. § 309.6, R. 92, Exh. 1. The FDIC-C identified five sub-categories of responsive documents: (1) communications between Valley Bank and the FDIC-C; (2) "bank records obtained during the examination process"; (3) documents relating to compliance and regulatory orders; (4) "internal work papers and notes created by FDIC bank examiners"; and (5) "internal communications within FDIC-C." R. 83, Exh. 10 at 1. The FDIC-C produced documents from sub-categories (1) through (3), so Crowe's motion to compel applies only to sub-categories (4) and (5). The FDIC-R and the FDIC-C contend that the documents are protected by the bank examination privilege, and that the Court must evaluate the FDIC-C's assertion of the privilege under the Administrative Procedure Act's "arbitrary and capricious" standard. FDIC-C's Resp. Br. at 8-10; Pl.'s Resp. Br.

at 2. As discussed below, the APA does not apply to Crowe's requests, and although the bank examination privilege applies to all of the documents in Category 1(4)-(5), Crowe has shown good cause to override the privilege as to a further subset of the documents.

The remaining three categories of documents are all documents obtained or created as part of the FDIC-R's investigation of potential claims arising out of Valley's failure: third-party documents, deposition transcripts, and settlement materials. R. 83, Def.'s Br. at 5-7. The FDIC-R argues that these documents are all protected by 12 C.F.R. § 308.147, Pl.'s Resp. Br. at 10, while Crowe contends that the Federal Rules of Civil Procedure and the Mandatory Initial Discovery Pilot Project Standing Order (Standing Order) override the regulation, Def.'s Br. at 15-17. Crowe is correct, so the FDIC-R must file, under seal and *ex parte*, unredacted versions of the deposition transcripts and certain settlement discussions sought by Crowe, so that the Court may conduct an *in camera* review. On the third-party documents that the FDIC-R obtained during its pre-litigation investigation, the FDIC-R must conduct a relevance review and produce all relevant documents not already produced independently by any third-party to Crowe. This includes Gabelmann's documents, because Iowa law controls his correspondence with Valley and its holding company, RVBI, and Iowa's accounting privilege contains an exception for court proceedings. *See* Iowa Code § 542.17.

## II. Standard of Review

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Rubin v. Islamic Republic of Iran,* 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004).

A party claiming that otherwise discoverable information is privileged must "expressly make the claim and describe the nature of the documents, communications, or tangible things in a manner that will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A) (cleaned up);[3] *see also* Fed. R. Civ. P. 45(e)(2)(A). This means that the burden rests upon the party objecting to disclosure to show why the information is privileged. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Finally, district courts have broad discretion when ruling on discovery-related issues, including motions to compel brought under Rule 37(a). *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008); *see also* Fed. R. Civ. P. 37(a).

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

### III. Analysis

As noted above, Crowe seeks four categories of documents from the FDIC-R and/or third parties. The Court addresses each in turn.

### A. Category 1: FDIC-C Documents

Crowe first contends that the FDIC-R should be compelled to produce all FDIC-C documents related to Valley in the FDIC-R's possession, and to obtain all other Valley-related documents in the FDIC-C's possession, conduct a relevance review, and produce all documents relevant to the case. Def.'s Br. at 8. The FDIC-C produced the first three of five subcategories of documents, leaving two contested subcategories subject to Crowe's motion to compel: (4) "internal work papers and notes created by FDIC bank examiners" and (5) "internal communications within the FDIC-C." FDIC-C's Resp. Br. at 2; R. 86, 04/19/2018 Minute Entry.

### 1. 12 U.S.C. § 1821(o)

Crowe argues that under 12 U.S.C. § 1821(o), the FDIC-R has legal "possession" over these documents and thus is obligated under the Federal Rules of Civil Procedure and the Standing Order to obtain them from the FDIC-C if necessary, and to produce all relevant documents. Def.'s Br. at 8. Section 1821(o) generally authorizes FDIC receivers to obtain FDIC-C records: "whenever the [FDIC] has been appointed as receiver for an insured depository institution, the appropriate Federal banking agency shall make available all supervisory records to the receiver which may be used by the receiver in any manner the receiver determines to be appropriate." § 1821(o). Against this, both the FDIC-R and FDIC-C cite § 1821(t),

which provides that a covered agency, including the FDIC-C, does not waive any privilege by transferring that information to another covered agency, including the FDIC-R, meaning that the bank examination privilege still applies. The FDIC-R and FDIC-C also argue that this Court should apply the APA's "arbitrary and capricious" standard to the FDIC-C's decision to withhold the documents pursuant to the privilege. Pl.'s Resp. Br. at 8-10; FDIC-C's Br. at 10, 21.

But § 1821(t), which preserves applicable privileges, is irrelevant to the issue at hand: Crowe does not contend that either FDIC entity has waived the bank examination privilege (although Crowe does argue that it simply does not apply). R. 97, Def.'s Reply to FDIC at 2-3. So to the extent the FDIC-C actually did provide documents to the FDIC-R, whether the bank examination privilege protects those documents is analyzed the same way regardless of the FDIC-R's possession of them.[4]

As to any documents within Category 1(4)-(5) that the FDIC-C has *not* provided to the FDIC-R, Crowe's argument premised on § 1821(o) is overbroad. It is true that § 1821(o) commands that federal banking agencies "shall make available all supervisory records to the receiver." But reading this section as Crowe proposes would mean that *any* time the FDIC-R is a party to litigation, *every* document, including internal correspondence and memoranda, of *every* federal banking agency

---

[4]Crowe did not submit a Part 309 request to the FDIC-R, and neither FDIC entity argues that any document in the FDIC-R's possession is governed by the APA. So discoverable records in the FDIC-R's possession are subject to Rules 26(b) and 34. What's more, as discussed later in this Opinion, the Federal Rules of Civil Procedure trump agency regulations, including § 309.6, so the FDIC-C's claim of privilege over FDIC-C's documents— whether or not they are in the FDIC-R's possession—is not subject to 5 U.S.C. § 706's arbitrary and capricious standard.

(not only the FDIC-C, but also the Office of the Comptroller of Currency, among others), is no longer is protected by the comprehensive framework of the APA, but rather is subject to discovery under the Federal Rules just the same as any document belonging to each of the parties. It is one thing when the FDIC-R has exercised its discretion and obtained or viewed an agency's documents under § 1821(o). But it is quite another to deem all banking-agency documents as in effect in the FDIC-R's possession even if the FDIC-R did not exercise its discretionary authority under § 1821(o).[5] Indeed, that interpretation would essentially vanquish the FDIC-R's discretion under § 1821(o), a strange outcome in light of the provision's *grant* of discretion to the FDIC-R. This situation is far afield from the usual discovery disputes in which a client, be it a client of an attorney or a patient of a doctor, "controls" the attorney-client file or patient medical records. So to the extent that the FDIC-R has not viewed or obtained any documents responsive to Category 1(4)-(5),[6] they are not

---

[5]To be sure, there are district court decisions holding that any federal agency documents are considered to be in the FDIC-R's possession under § 1821(o). *See, e.g.*, *F.D.I.C. v. Berling*, 2015 WL 3777408, at *2 (D. Colo. June 16, 2015); *F.D.I.C. v. Bayer*, 2015 WL 12830467, at *2 (M.D. Fla. Feb. 25, 2015); *F.D.I.C. v. Dosland*, 2014 WL 1347118, at *5 (N.D. Iowa Apr. 4, 2014); *F.D.I.C. v. Appleton*, 2012 WL 12887400, at *6 (C.D. Cal. Aug. 27, 2012); *Resolution Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992); *Comeau v. Rupp*, 810 F. Supp. 1127, 1166 (D. Kan. 1992). But those opinions are not binding, and no Circuit courts have addressed the issue.

[6]The record is not completely clear on whether the FDIC-R has viewed or obtained all responsive FDIC-C documents. The correspondence between Crowe and the FDIC entities attached to the parties' briefs suggests that the FDIC-R has all responsive documents in its possession, or did at one point, which would be enough to consider the FDIC-R to have exercised its discretion to "control" documents under § 1821 and make them subject to the Standing Order or Rule 34. *See* R. 83, Exh. 10 at 1 ("The FDIC as Receiver for Valley Bank ("FDIC-R") reviewed a number of boxes of documents that were previously compiled by the FDIC examiners as part of the agency's supervision of Valley Bank. The boxes contained the five categories of documents described in the FDIC-R's Second Supplement to Mandatory Initial Response to No. 3" including Category 1(4)-(5).); *id.*, Exh. 7 at 2 ("Until recently, [FDIC-R] had viewed a very limited number of FDIC-C documents. … Approximately two

subject to production pursuant to the Standing Order or any Rule 34 request Crowe makes to the FDIC-R.

## 2. 12 C.F.R. § 309.6

Moving on, the next question is what to do about potentially responsive FDIC-C documents that the FDIC-R has neither viewed nor ever had in its possession. The FDIC-C argues that its assertion of the bank examination privilege should be evaluated under the APA, whereas Crowe says that the Federal Rules of Civil Procedure apply. The Court agrees with Crowe that the Federal Rules govern.

The FDIC-C relies on *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994), to argue that the APA governs when a litigant seeks to obtain documents from a non-party federal government agency, even when the dispute is presented to the Court in the form of a motion to compel. FDIC-C's Br. at 8. But *Edwards* is distinguishable in a key way: the case originated in *state* court, and the litigant sought Department of Justice records pursuant to a *state*-court issued subpoena, which the Department resisted pursuant to an agency regulation. *Edwards*, 43 F.3d at 314. When the litigant moved to compel a response to the subpoena, the Justice Department removed the case to federal court under 28 U.S.C. § 1442, so the federal district court's jurisdiction over enforcing the subpoena was derivative of the *state* court's jurisdiction. *Id.* The Seventh Circuit held that the Department had not waived its sovereign immunity in state court, so the district court lacked "jurisdiction to

<hr>

weeks ago, [FDIC-R] reviewed and obtained copies of certain additional examiner documents. …"). But the parties' briefs leave open the question that there may be at least some FDIC-C documents that may be responsive that have never been in the FDIC-R's possession. Def.'s Br. at 8; FDIC-C's Resp. Br. at 2.

compel the delivery of the [requested information] once the regulatory authority had denied the request." *Id.* at 317. Because the district court was barred from directly enforcing the subpoena, the Seventh Circuit held that the proper course was to recast the state court litigant's motion to compel as an administrative request under the APA, which meant that the APA's "arbitrary and capricious" standard applied to the agency's decision to withhold the records. *Id.* at 314-15.

But the case at hand was originally filed in federal court, not state court, and Crowe sought documents from the FDIC-C pursuant to a federal subpoena under Rule 45.[7] This Court has original jurisdiction over this case pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331, rather than derivative jurisdiction under 28 U.S.C. § 1442. So the holding in *Edwards* does not apply. There is a Circuit split over how to treat Rule 45 subpoenas when they are directed at a federal agency. The split centers on whether the APA's general provision authorizing judicial review of agency actions, 5 U.S.C. § 702, represents a waiver of sovereign immunity that is limited to the arbitrary and capricious review found in § 706. Section 702 allows persons who are aggrieved by agency action to seek judicial review, and the statute opens the federal courthouse doors for injunctive relief: "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity … shall not be dismissed nor relief therein be denied on the ground that it is against the

---

[7]Crowe also issued a Rule 309 request, R. 92, Exh. 1, but simply because Crowe covered its bases when attempting to obtain the information from the FDIC-C does not make its Rule 45 subpoena moot.

United States … ." 5 U.S.C. § 702. There is nothing in § 702 that limits the waiver of sovereign immunity to actions under § 706. *Compare Linder v. Calero-Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001) (holding that § 702 effectuates a waiver of sovereign immunity as to Rule 45 subpoenas, so the Federal Rules apply); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-89 (9th Cir. 1994) (holding sovereign immunity is not a bar to compelling the testimony of non-party federal officers under Rules 26 and 45, because Congress waived sovereign immunity as to all actions that seek "relief other than money damages" in § 702) *with COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (applying the APA's arbitrary and capricious standard to non-party federal agency's refusal to comply with a Rule 45 subpoena, because § 702 is part of the APA); *E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 598 (2d Cir. 1999), *opinion amended on reh'g,* 212 F.3d 689 (2d Cir. 2000) (same); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (applying APA's arbitrary and capricious standard to Rule 45 subpoena served on non-party federal agency without analyzing whether the agency had waived its sovereign immunity).

The Seventh Circuit has not specifically addressed the issue, but like the D.C. and Ninth Circuits, has held that § 702 constitutes a waiver of sovereign immunity over federal agencies and the waiver is *not* limited by 5 U.S.C. § 706 (which sets forth the arbitrary and capricious standard) to actions brought under the APA. *See Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011) ("[T]he waiver in § 702 is not limited to claims brought pursuant to the review provisions contained in the APA itself. The waiver applies when any federal statute authorizes

review of agency action, as well as in cases involving constitutional challenges and other claims arising under federal law."); *see also Czerkies v. Dep't of Labor*, 73 F.3d 1435, 1438 (7th Cir. 1996) (en banc) ("The Administrative Procedure Act waives the federal government's sovereign immunity from actions seeking judicial review of federal administrative decisions, provided the action is not one for 'money damages.'"). Seventh Circuit precedent is thus more in line with the decisions of the D.C. Circuit and the Ninth Circuit than the other Circuits that have addressed the issue. Because a refusal to comply with a subpoena under Rule 45 is not an action for "money damages," § 702 strips the FDIC-C of its sovereign immunity, thereby giving federal courts the authority to enforce Rule 45 subpoenas served on federal agencies. *See Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). That is why *Edwards* is different: the state court subpoena there actually was quashed and was treated as nothing more than a request to the federal agency, 43 F.3d at 316-17, whereas here the FDIC-C faces a Rule 45 subpoena.[8] Because this case originated in federal court, the FDIC-C waived its sovereign immunity under 5 U.S.C. § 702. So this Court will review the

---

[8]It is true that other decisions in this District have held that, under *Edwards*, district courts should review discovery requests to non-party federal agencies under the APA standard of review even when the case originated in federal court. *See Estate of Belbachir v. United States*, 2010 WL 3239444, at *3 (N.D. Ill. Aug. 13, 2010) (relying on *Edwards* to review non-party federal agency's refusal to comply with subpoena issued in federal court under the APA rather than the Federal Rules); *Barnett v. Illinois State Bd.*, 2002 WL 1560013, at *1 n.1, *2 (N.D. Ill. July 2, 2002) (holding that it is irrelevant that *Edwards* did not consider whether Rule 45 rather than the APA should apply because "the *Edwards* opinion is simply too broadly worded to leave room for such factual nit-picking. *Edwards* unequivocally held that a federal agency's refusal to comply with a subpoena, at least when done 'pursuant to valid agency regulations,' is to be reviewed under the APA."). As discussed earlier, however, the distinction between a state court subpoena and a Rule 45 subpoena distinguishes *Edwards*.

FDIC-C's refusal to comply with Crowe's subpoena under the Federal Rules rather than the APA.

### 3. Bank Examination Privilege

### i. The Privilege Applies

Now that the standard of review is established, the Court must determine whether the bank examination privilege[9] applies to Category 1(4)-(5) of the FDIC-C's records. R. 83, Exh. 10 (letter from the FDIC-C asserting the bank examination privilege over "internal work papers and notes created by FDIC bank examiners" and "internal communications within the FDIC-C."). The bank examination privilege "shields from discovery only agency opinions or recommendations; it does not protect purely factual material." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992); *see also In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995). The agency has the burden of showing that the requested documents are protected. *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). If the agency fails to establish the privilege applies to the subpoenaed material, then it must produce the documents. *Id.*

---

[9]Although neither the Seventh Circuit nor the Supreme Court has explicitly recognized the bank examination privilege, the bank examination privilege is really a subset of the deliberative process privilege. *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995); *In re Bank One Sec. Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 426 (N.D. Ill. 2002); *cf. United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (generally recognizing the deliberative process privilege).

Crowe contends that the FDIC-C has simply asserted a "conclusory and blanket claim of the privilege" and points out that neither FDIC entity has provided a privilege log justifying the withholding of the documents. Def.'s Br. at 11-12. The FDIC entities argue that they provided sufficient descriptions of the withheld documents ("internal work papers and notes created by FDIC bank examiners" and "internal communications within the FDIC-C"). FDIC-C's Resp. Br. at 17 n.3; R. 83. Exh. 10. FDIC-C also argues that creating a privilege log is not required and would be unduly burdensome on a non-party. *Id.* It is true that when evaluating whether the bank examination privilege applies, courts often require more from the agency, and sometimes courts conduct an *in camera* review of the contested documents. *See, e.g.*, *Schreiber*, 11 F.3d at 221 (holding a "conclusory affidavit asserting that any factual portion of the document cannot be separated from the evaluative portion" was insufficient to assert the bank examination privilege and collecting cases to note that often an *in camera* inspection is common, but not necessary, for determining when the privilege applies); *see also In re Bank One*, 209 F.R.D. at 427 (the parties asserting the privilege "submitted privilege logs as well as documents for *in camera* review").

But sometimes deciding a privilege dispute does not require the make-work of a document-by-document privilege log, so long as asserting *categories* of documents subject to the privilege is clear enough. *See Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (holding a document-by-document listing to be unduly burdensome and of no material benefit where party was asserting the work-product, attorney-client, and joint-deference

14

privileges); *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *7 (N.D. Cal. Nov. 15, 2012) (allowing party asserting attorney-client and work-product privileges over requested communications between it and its counsel to "provide categorical logs, essentially grouping documents by type and indicating how each of those categories is privileged"); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (allowing a categorical rather than itemized privilege log, but requiring the producing party to "justify its assertion of privilege with regard to each category, and the description of each category must provide sufficient information for [the compelling party] to assess any potential objections to the assertions of attorney-client privilege."); *S.E.C. v. Thrasher*, 1996 WL 125661, at *1-2 (S.D.N.Y. Mar. 20, 1996) (holding a categorical privilege log to be sufficient when the party moving to compel sought "production of all communications between defense counsel concerning the lawsuit [because] on its face this demand seeks wholesale production of documents ordinarily covered" by several privileges).[10]

Here, the two categories of documents identified by the FDIC-C in its March 20 letter, R. 92, Exh. 4 at 1, make clear that the documents at issue—internal work papers and notes, and internal communications—constitute the kinds of materials

---

[10]Both the FDIC-C and Crowe cite to *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508, 515 (N.D. Ill. 2006), in support of their respective arguments about the level of detail required for the FDIC-C's assertion of privilege. FDIC-C's Resp. Br. at 17 n.3; Def.'s Reply to FDIC at 4-5. But *Lawrence* is not particularly helpful to either side. Although the FDIC-C is mostly correct in asserting that *Lawrence* held that "letters and/or briefs asserting formal claims of" deliberative process privilege" was sufficient, Crowe is also correct in pointing out that *not* all letters and/or briefs sufficed: only those that "specifically identif[ied] and describe[d] the documents" subject to the privilege and offered "precise and certain reasons for preserving the confidentiality of the documents in question" properly invoked the privilege. *Lawrence*, 239 F.R.D. at 515-16.

that at least some courts have held are "clearly protect[ed] from disclosure." *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 450 (E.D.N.Y. 1993) ("The privilege clearly protects from disclosure analyses, opinions and recommendations contained in internal agency documents relating to bank examinations, and courts will continue to withhold from discovery information which is not primarily factual."); *Delozier v. First Nat. Bank of Gatlinburg*, 113 F.R.D. 522, 527 (E.D. Tenn. 1986) (holding discovery should "not inject itself into the internal, deliberative, decision-making processes of government"). The scope of the bank examination privilege, coupled with how the categories are described, render a detailed privilege log less important than the typical privilege dispute. What's more, the contested documents comprise the FDIC-C's internal communications, work papers, and notes, and thus are not the source of independent historical facts. Instead, to the extent that the records contain factual information, those facts were provided from outside sources—which have been produced to Crowe—including bank examination reports. Pl.'s Resp. Br. at 4-5. So there is no way that the records in Category 1(4)-(5) contain solely factual matter not protected by the privilege, and any historical facts in them are already available to Crowe. All in all, then, FDIC-C's identification of the two-subcategories of withheld documents in its March 20 letter, R. 92, Exh. 4 at 1, even absent a detailed privilege log, is sufficient to satisfy the Court that the bank examination privilege properly applies to those records, even without conducting an *in camera* review. But that is not the end of the inquiry.

## ii. Good Cause to Override the Privilege

The next question is whether Crowe has demonstrated good cause to overcome the privilege that applies to the documents in Category 1(4)-(5). *In re Bank One*, 209 F.R.D. at 427 (citing *In re Bankers Trust*, 61 F.3d at 471). Courts have found that "the privilege may be overridden where necessary to promote the paramount interest in having justice done between litigants." *In re Subpoena*, 967 F.2d at 634 (cleaned up). The court must balance the competing interests of the party seeking the documents and the interests of the federal agency to determine whether good cause exists. *Id.* Courts must consider at least the following five things: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the 'seriousness' of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id* (quoting *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)). These factors are not exhaustive, but are "a floor upon which to balance sufficiently the competing interests of the parties and the federal agency." *In re Bankers Trust*, 61 F.3d at 472.

On the first factor—relevancy—Crowe argues that the records are relevant to (1) whether FDIC-C examiners in fact relied on Crowe's unqualified opinion, which goes to the causation element; and (2) whether FDIC-C examiners had any knowledge of Henson's scheme earlier than June 2013, which again goes to causation, as well as to damages. Def.'s Br. at 13. At least one court in this District has held that the relevance factor weighs in favor of the party seeking to compel disclosure when there

is at least the possibility that the subject documents may give insight into "damages and loss causation." *F.D.I.C. v. Giancola*, 2015 WL 5559599, at *5 (N.D. Ill. Sept. 18, 2015). But it is unlikely that *all* FDIC-C internal correspondence and work papers or notes pertaining to Valley are relevant to causation or damages—especially given that the breadth of work that the FDIC-C performed as to Valley surely greatly exceeds what is relevant to this specific case.

The FDIC-R, however, has identified three FDIC-C examiners—Shirley Langford, Leslee Martin, and Jon Peterson—who likely have relevant information to the parties' claims or defenses. R. 83, Exh. 1 at 5. In light of their identification as witnesses with relevant information, it would be unfair for Crowe to be disabled from testing pertinent assertions that these three examiners might make during a deposition (or at trial) without reviewing records generated or reviewed by those examiners. The relevancy is thus strongest for documents authored by, or sent to or from, these three examiners specifically concerning (1) Crowe's unqualified audit opinions on Valley's financial statements; and (2) any evidence of events or conduct that contributed to or caused Valley's losses between 2011 and 2013, including but not necessarily limited to Valley's inadequate internal controls, Valley's lack of formal process for identifying loans that should have been classified as troubled debt restructurings, Valley's engagement in Bank-financed sales of its troubled private label-mortgage backed securities to related parties, Henson's failure to record loan losses, and Henson's manipulation of Valley's Allowance of Loan and Lease Losses. This limitation on the relevant documents hopefully will alleviate some of the burden

on the FDIC-C, because it can summarily exclude documents not generated or reviewed by those examiners.

The other four factors either support overriding the bank examination privilege as to these documents,[11] or do not weigh in favor of maintaining the privilege strongly enough to negate the fairness problem. On factor two (availability of other evidence), although it is true Crowe has received the historical factual information on which the FDIC-C regulators acted or corresponded, the knowledge and opinions of the three examiners on Valley's loan portfolio, the charge-offs to certain loans, and the uncovering of Henson's scheme have independent relevancy on causation and damages. R. 83, Exh. 1 at 5. Moving on, the third factor weighs in favor of overriding the privilege: there is no doubt as to the seriousness of the litigation, in light of the FDIC-R's allegation that damages are around $21 million; also, Crowe's professional reputation is also implicated by the allegations. *See* Def.'s Br. at 14; FDIC-C's Br. at 18; *see also Giancola*, 2015 WL 5559599, at *1, 6 (holding that an action involving tens of millions of dollars in alleged damages and alleging claims of negligence, gross negligence, and breach of fiduciary duty, indicate that the litigation is serious). The fourth factor also weighs in favor of overcoming the privilege: although the FDIC-C is not a party to the litigation, another government entity, the FDIC-R, is, so the government plays a considerable role in the litigation. *See Giancola*, 2015 WL 5559599, at *6 (holding this element weighs in favor of overriding the privilege where

---

[11]Because the Court has determined that internal FDIC-C communications, work product, and notes not involving the three identified FDIC-C examiners are not relevant to the parties' claims or defenses, it is unnecessary to go through the remaining four factors as to those documents.

the FDIC-R is a party to the litigation and that "an element of unfairness would enter if the government could further its defense against these claims by concealing relevant evidence behind the screen of government privilege"). Finally, the fifth factor (possible future government timidity) does weigh against overcoming the privilege, but not enough to prevent disclosure of the records. It is true that some government examiners might be more restrained about drafting internal correspondence or memoranda in the future, knowing that the documents might become discoverable. *See Bank One*, 209 F.R.D. at 428. But the other four factors—and the necessity of maintaining fairness in the litigation—support overriding the privilege, and the confidentiality protective order will help alleviate the concern about the chilling effect. *See Schreiber*, 11 F.3d at 222; *Giancola*, 2015 WL 5559599, at *6 ("The fact of disclosure in this case does not necessarily translate into future disclosures, as each case involves a fresh consideration of the facts at issue and the factors militating for or against the application of privilege. FDIC–R does not explain how the disclosure of the [document] would stymie the candor of FDIC staff deliberations in the future.").

In sum, the FDIC-R and/or the FDIC-C[12] must identify and produce the documents described above by July 23, 2018.

---

[12]Although the discovery obligation is strongest for the FDIC-R, as a party to the litigation, for documents the FDIC-R has not viewed or obtained from the FDIC-C, under Rule 45 the FDIC-C has the same obligation to identify and produce relevant documents. Of course under § 1821(o), the FDIC-R *can* obtain all FDIC-C documents, although as discussed above, it is within the FDIC-R's discretion not to exercise its rights under § 1821(o). The Court's analysis of the bank examination privilege applies equally to all requested documents within Category 1(4)-(5), whether or not they are in the FDIC-R's possession, because the standard of review is the same under the Standing Order, Rule 34, and Rule 45. That said, it may be more efficient for the FDIC-C to provide its records to the FDIC-R, so that the FDIC-R can conduct just one review as directed above. If the FDIC-C prefers to conduct its

## B. 12 C.F.R. § 308.147

Crowe seeks to compel three other categories of documents being withheld by the FDIC-R: (1) third-party document productions made to the FDIC-R in the course of its pre-litigation investigation of Valley Bank; (2) unredacted deposition transcripts; and (3) documents related to settlements or potential claims against third parties in connection with losses incurred by Valley Bank. Def.'s Br. at 2. The FDIC-R argues that these materials are "confidential investigative information" that are "protected from disclosure under the confidentiality provisions of 12 C.F.R. § 308.147." R. 83, Exh. 3 at 1. The federal regulation on which the FDIC-R relies states that "[i]nformation and documents obtained by the FDIC in the course of such investigations shall not be disclosed, except as provided in part 309 of this chapter *and as otherwise required by law*." 12 C.F.R. § 308.147 (emphasis added). Although the Seventh Circuit has not directly addressed the issue, many other Circuits have convincingly held that federal regulations do not trump the Federal Rules of Civil Procedure. *See, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 61-62 (1st Cir. 2007) (agency regulations promulgated under 5 U.S.C. § 301 "are only procedural, and do not create a substantive entitlement to withhold information"); *Houston Bus. Journal, Inc.*, 86 F.3d at 1212 (noting that to the extent the agency's regulations conflict with the Rules of Civil Procedure, those regulations "exceed[] the [agency's] authority under the Housekeeping Statute"); *Exxon Shipping Co.*, 34 F.3d at 780 ("Section 301 does not create an independent privilege to withhold government

---

own search pursuant to this holding, then so be it: the Court leaves the method of search and production to the FDIC entities, so long as it does not cause undue delay.

information or shield federal employees from valid subpoenas. Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action."); *see also Hoffman v. BLR Grp. of Am., Inc.*, 2009 WL 10689505, at *2 (S.D. Ill. Jan. 12, 2009) (noting the lack of Seventh Circuit precedent and citing cases from other circuits holding that agency regulations do not override a federal agency's discovery obligations).

What's more, § 308.147 specifically states that FDIC-R investigatory materials are protected from disclosure except "as otherwise required by law." The Federal Rules of Civil Procedure *are* another source of law, and require production of "non-privileged material that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Standing Order at 1; §§ A.2, B.3. Not only is it well-established that agency regulations cannot abrogate the Federal Rules, but the regulation at issue also contains language stating that it does not override other laws.[13] Section 308.147 does not protect the FDIC-R's investigatory materials sought in Categories 2-4 from discovery under the Federal Rules.

### C. Category 2

In light of the inapplicability of 12 C.F.R. § 308.147, the FDIC-R must conduct a relevancy review and produce the requested documents that are relevant to the

---

[13]It is true the only court that has addressed the issue specifically as to § 308.147 denied a motion to compel, holding that the FDIC's investigatory materials were protected by the regulation and did not have to be produced pursuant to the Federal Rules. *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 678 (N.D. Fla. 2013). But the court did not engage in any substantive analysis of the interplay between the agency regulation and the Federal Rules, and the opinion is not binding.

claims and defenses in this litigation, pursuant to the Standing Order and the Federal Rules of Civil Procedure. The parties disagree over whether the FDIC-R has already conceded that nearly all the third-party materials it collected are responsive to Crowe's document requests and are relevant to the litigation. Def.'s Br. at 18; Pl.'s Resp. Br. at 13; Def.'s Reply to FDIC at 9-10. Whatever was said before, it is quite possible that the FDIC-R's pre-litigation investigation was broader than the claims it elected to bring in the current litigation, so to the extent third-party materials are not relevant to the claims and defenses at issue, the FDIC-R does not have to produce them. But as the party in possession of the documents, the FDIC-R has the burden of conducting a relevancy review and producing responsive documents to Crowe.

The FDIC-R's contention that reviewing these materials would "place[] unnecessary burden on the FDIC-R" is misplaced. R. 83, Exh. 5 at 2; *see also id.*, Exh. 7 at 1. Simply because the FDIC-R obtained a plethora of documents during its investigation does not relieve it of its obligation to produce relevant documents in the course of litigation. *See, e.g.*, *United States v. DISH Network, L.L.C.*, 2010 WL 5463101, at *4 (C.D. Ill. Dec. 29, 2010) ("Just because materials are voluminous or difficult to compile, they are not unduly burdensome. If they are relevant, they are discoverable subject to the proportionality test of Rule 26(b)(2)(iii). … [T]he party opposing discovery[] must prove that discovery violates the proportionality test."); *Appleton*, 2012 WL 12887400, at *2 ("Generalized objections that a discovery request is burdensome without resort to specific reasons is insufficient to justify a refusal to respond. Moreover, the mere fact that responding to a discovery request will require

the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request.") (cleaned up); *see also Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) (same); *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (same).

Perhaps the parties can agree on search terms to alleviate the FDIC-R's burden, but if not, the FDIC-R must conduct a relevancy review of every document it obtained from a third-party[14] during the investigation. The production must be made by July 23, 2018. If the FDIC-R needs more time to conduct this review, then of course it may file an extension motion as needed. To the extent that a third-party has already produced, or has agreed to produce, all requested documents in response to Crowe's third-party subpoenas, *see* Pl.'s Br. at 14; R. 83, Exh. 17 at 4 (RMS McGladrey has agreed to produce all responsive documents), the FDIC-R does not need to conduct a relevancy review of the documents in its possession collected from that third-party.

### 1. Illinois Accountant's Privilege

Gabelmann contends that the records sought by Crowe from Gabelmann are protected by the Illinois Accountant's Privilege, 225 ILCS 450/27. The parties agree that under Federal Rule of Civil Procedure 501 and *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 83-89 (1994), state law controls Gabelmann's assertion of any accounting

---

[14]This includes documents obtained from Gabelmann. *See* Section III.C.1 for a discussion about why the Illinois Accountant's Privilege does not apply to documents sought from Gabelmann.

privilege. But the parties disagree about whether Illinois or Iowa law controls. Gabelmann Resp. Br. at 3; R. 98, Def.'s Reply to Gablemann at 1-2; R. 103, Gabelmann Sur-Reply at 1.

Under the *Erie* doctrine, a federal court applies the forum state's choice-of-law rules to determine which state's privilege law applies. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Illinois courts have adopted the Restatement (Second) of Conflict of Laws § 139, which looks to the law of the state that has the most significant relationship with the allegedly privileged communications to determine whether they are privileged. *Sterling Fin. Mgmt., L.P. v. UBS PaineWebber, Inc.*, 782 N.E.2d 895, 904 (Ill. App. 2002). "The state which has the most significant relationship with a communication will usually be the state where the communication took place," although if there was a prior relationship between the parties, the "state of most significant relationship will be that where the relationship was centered." Restatement (Second) of Conflict of Laws § 139(1), Comment e (1971). As explained next, the Court concludes that Iowa, not Illinois, has the most significant relationship to the relevant communications.

Gabelmann argues that because he was a licensed CPA in Illinois, allowed to operate in Illinois under the trade name "Gabelmann & Associates, P.C.," and because Valley was located in Illinois, Illinois has the most significant relationship to the communications. Gabelmann Resp. Br. at 3-4; Gabelmann Sur-Reply at 4. But the connections to Iowa are much more substantial: at the relevant time, Gabelmann was an accounting firm licensed in Iowa with its only office located in Iowa, and,

importantly, Gablemann's audit client was in fact not Valley, but *RVBI*—Valley's holding company—which is located in *Iowa. See, e.g.*, R. 98, Exh. A at FDIC-R-VAL-CRW-0018438.002, .004 (Gabelmann's proposal for service to RVBI is addressed to RVBI's Audit Committee, c/o Catherine Carber, Controller, with an address in Iowa and states that Gabelmann "primarily serves the local Quad City Area from its office located … in Bettendorf, Iowa"); *id.*, Exh. B (Gabelmann's 2012 engagement letter addressed to RVBI's Audit Committee in Iowa); *id.*, Exh. C at FDIC-R-VAL-CRW-0018021.002 (Gabelmann's independent audit report for the 2012 financial statements is addressed to the "Board of Directors, [RVBI] and Subsidiaries, Davenport, Iowa," and bears a legend at the bottom of the page that shows Gabelmann's address in Iowa); *id.*, Exh. D (CPA license showing Gabelmann's Iowa address). Gabelmann's engagement letter with RVBI, an Iowa corporate entity, directed him to perform audits on its subsidiaries, including Valley Bank in Illinois. So Gabelmann did not engage directly with Valley, the Illinois entity.

What's more, Gabelmann's communications with his client, RVBI, were centered in Iowa, because RVBI's executive management and accounting and financial reporting functions were centralized in an Iowa office. So too with his communications with Valley, because generally the same individuals in Iowa ran Valley. *See, e.g.*, R. 98, Exh. E (Valley's Controller states Gabelmann was coming to the Iowa office to work on planning the audit, where the bank's Controller was located). Simply because Gabelmann was licensed as an accountant in Illinois and

could do business there do not overcome the Iowa-based communications and the centrality of Iowa to the relationship.[15]

Gabelmann also argues that Illinois public policy should trump the law of the state with the most significant relationship. Gabelmann relies on Restatement (Second) of Conflict of Laws § 139(1), which says that evidence ordinarily not privileged under the law of the state with the most significant relationship sometimes still will be covered by privilege if "the admission of such evidence would be contrary to the strong public policy of the forum." *See also id.*, Comment c ("The evidence will not, however, be admitted in those rare instances where its admission would be contrary to the strong public policy of the forum. Such a situation may occasionally arise when the state of the forum, although it is not the state which has the most significant relationship with the communication, does have a substantial relationship to the parties and the transaction and a real interest in the outcome of the case."). Gabelmann relies heavily on *Sterling Financial*, in which the Illinois Appellate Court held that, although the attorney-client privilege would have prevented disclosure under New York law, Illinois public policy supported disclosure. *Sterling Financial*, 782 N.E.3d at 904-05. But *Sterling Financial* actually points to the opposite of what Gabelmann is arguing: information privileged in New York was trumped by "Illinois's

---

[15]The only case Gabelmann cites in support of his assertion that Illinois has the most significant relationship to the communications is *PepsiCo., Inc. v. Baird Kurtz & Dobson LLP*, 305 F.3d 813, 814-816 (8th Cir. 2002), in which the Eight Circuit analyzed the Illinois accountant's privilege as applied to information obtained by an accountant located in Missouri from a plant located across the border in Illinois. But the Eighth Circuit did not engage in any analysis about why it applied Illinois law, and did not discuss the nature or location of the communications, so the opinion does not offer much guidance here.

strong policy favoring discoverability." *Id.* at 904. Here, Gabelmann argues that an Illinois public policy favoring *non-disclosure* should trump Iowa's policy of discoverability. Gabelmann Sur-Reply at 2-4. It is true that the existence of the Illinois Accountant's Privilege demonstrates that the Illinois "legislature has determined public policy trumps the truth-seeking function of litigation in certain circumstances." *Brunton v. Kruger*, 32 N.E.3d 567, 578 (Ill. 2015). But as *Sterling Financial* noted, Illinois also has a "strong policy favoring discoverability." 782 N.E.3d at 904-05; *see also Brunton*, 32 N.E.3d at 579 ("[P]rivileges are not to be expansively construed because they are exceptions to the general duty to disclose during discovery.") (internal citation omitted). What's more, Comment c to § 139(1) specifically states that it is "rare" for the forum's public policy against admission to override the law of the state with the most significant relationship favoring admission. Restatement (Second) of Conflict of Laws § 139(1), Comment c (1971). This is not that rare case.

Finally, Gabelmann contends that there is no real conflict of law because it is unclear what triggers Iowa's exception to the accountant-client privilege. Gabelmann Sur-Reply at 4-5 (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 909 (Ill. 2014) (holding a choice-of-law determination is required only when the moving party has established an actual, rather than a potential, conflict between state laws)). Iowa Code § 542.17 states that the accountant's privilege "shall not be construed … as prohibiting disclosures in a court proceeding." Although the Court, like Gabelmann, has been unable to find any cases analyzing

this exception, its plain language makes clear that the privilege does not protect otherwise privileged information in a court proceeding, which certainly encompasses a subpoena issued in the current litigation. Gabelmann Sur-Reply at 4.

So Iowa law applies. The Iowa accountant's privilege does not protect the documents in a court proceeding, so Gabelmann's records are not shielded from Crowe's Rule 34 discovery request to the FDIC-R or from the Rule 45 subpoena to Gabelmann. As to who should review and produce the documents, the burden falls on the FDIC-R. Yes, Crowe issued a Rule 45 subpoena to Gabelmann, but Crowe did so only because the FDIC-R refused to turn over the records pursuant to Crowe's Rule 34 request for production. R. 83, Exh. 6 at 2. So it is the FDIC-R's, not Gabelmann's, burden to conduct a relevancy review as discussed earlier in this Opinion, and to produce the relevant documents responsive to Crowe's request.

### D. Category 3

Crowe seeks to compel the FDIC-R to produce unredacted versions of administrative deposition transcripts for all witnesses deposed as part of the FDIC-R's pre-litigation investigation. Def.'s Br. at 6-7. The parties disagree over whether the FDIC-R redacted only irrelevant material or whether it sufficiently justified its redactions. Def.'s Br. at 19-20; Pl.'s Resp. Br. at 16. Crowe also seeks the deposition transcript of Michael Owen, a partner at Perkins Coie, which the FDIC-R is withholding on the basis of attorney-client privilege, although the transcript was not included on a privilege log. Def.'s Br. at 20-21. The parties dispute whether the attorney-client privilege properly applies. *Id.*; Pl.'s Br. at 16.

On the threshold issue, the Court agrees with the FDIC-R that it provided enough information in its privilege logs detailing the subject matter of the redacted testimony to avoid an order that the FDIC-R produce the documents in their entirety. Pl.'s Resp. Br. at 16-17; R. 83, Exh. 8 at Att. A; *contra EEOC v. Dolgencorp, LLC*, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) (granting motion to compel production of unredacted documents because "what constitutes relevant information is often a matter of judgment, and even irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information") (cleaned up). But some of the redactions do raise enough of a question that the Court will require an *in camera* review of the redacted portions of the transcripts, and will require an *in camera* review of Owens's transcript. By June 29, 2018, the FDIC-R shall upload the unredacted transcripts and the transcript of Owens's deposition, under seal and *ex parte*, and highlight in yellow the parts that were redacted so the Court can conduct the *in camera* review.

### E. Category 4

Lastly, Crowe seeks to compel production of documents related to settlements or potential claims against third-parties in connection with losses incurred by Valley or related entities. Def.'s Br. at 21. First, Crowe argues that communications and documents related to potential claims against third-parties that are *not* related to settlement, negotiations, or compromise are not protected by Federal Rule of Evidence 408. That is correct. And the documents are relevant to damages, so this is not merely "a fishing expedition," especially in light of the Court's understanding of

Crowe's theory of defense as discussed earlier in this Opinion. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015). The FDIC-R must produce those records, redacted as necessary, by July 16, 2018 (to the extent they exist).

But to the extent that Crowe seeks documents for the purpose of demonstrating that the FDIC-R took the position during negotiations with others that Henson or another third-party was to blame for Valley's losses, those documents are inadmissible under Rule 408(a) because that evidence would be offered to disprove Crowe's liability. What's more, Crowe's request seeks communications from the attorneys for the settling parties, which almost certainly is inadmissible as attorney work product material. Still, some of the requested documents might be admissible, despite Rule 408(b), for another purpose, such as proving witness bias (for instance, a communication proposing to reduce Henson's fine in exchange for cooperation against Crowe). As Crowe points out, three of the fact witnesses to be deposed—Larry Henson, Michael Henson, and Robert Fick—entered into a settlement agreement with the FDIC-R, which provides that they will "cooperate fully" with the FDIC-R in any subsequent litigation related to the bank. Def.'s Reply to FDIC at 14, R. 83, Exh. 19 at 7. That statement is enough to at least raise a question of potential bias.

The FDIC-R's contention that courts within this District have drawn a line between allowing discovery of settlement agreements and restricting discovery of settlement discussions, Pl.'s Resp. Br. at 18-19 (citing *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368-69 (N.D. Ill. 2001); *Pfizer Inc. v. Apotex Inc.*, 731 F.

Supp. 2d 754, 764 (N.D. Ill. 2010)), is not exactly on point. That line only exists when the party seeking to compel production seeks the documents for a purpose that is impermissible under Rule 408; they may be admitted "for another purpose, such as proving a witness's bias or prejudice." *See Clark v. Experian Info. Sols., Inc.*, 2006 WL 626820, at *2-3 (N.D. Ill. Jan. 6, 2006), *opinion approved,* 2006 WL 931677 (N.D. Ill. Apr. 10, 2006) (noting that to obtain information that would be inadmissible under Rule 408, the proponent of discovery must demonstrate that it is admissible for another purpose or show how discovery of the item might lead to other admissible information. The Court emphasizes that "such a showing is required only to obtain information that would be inadmissible because of Rule 408."); *see also Noble Roman's Inc. v. B & MP, LLC*, 2017 WL 1163866, at *8 (N.D. Ill. Mar. 29, 2017) ("Rule 408 does not create any category of documents that is off limits from discovery, but rather creates a narrow exclusion from admissibility as evidence.") (cleaned up). So at least some of the negotiations and correspondence might be admissible under Rule 408(b) for the purpose of showing witness bias.

To figure this out, by July 13, 2018, the FDIC-R shall file, under seal and *ex parte*, the settlement negotiations and communications leading up to the two settlement agreements that have been provided to Crowe. The Court will conduct an *in camera* review to determine its discoverability.

## IV. Conclusion

For the reasons discussed above, Crowe's motion to compel is granted in part and denied in part. First, by July 23, 2018, the FDIC-R (and/or FDIC-C) must conduct

a relevancy review and identify and produce all documents authored by, or sent to or from Shirley Langford, Leslee Martin, and Jon Peterson, concerning (1) Crowe's unqualified audit opinions on Valley's financial statements; and (2) any evidence of events or conduct that contributed to or caused Valley's losses between 2011 and 2013, including but not necessarily limited to Valley's inadequate internal controls, Valley's lack of formal process for identifying loans that should have been classified as troubled debt restructurings, Valley's engagement in Bank-financed sales of its troubled private label-mortgage backed securities to related parties, Henson's failure to record loan losses, and Henson's manipulation of Valley's Allowance of Loan and Lease Losses.

Second, by July 23, 2018, the FDIC-R must conduct a relevancy review of every document it obtained from a third-party during its pre-litigation investigation, excepting documents obtained from third-parties who have already produced or have agreed to produce all requested documents in response to Crowe's third-party subpoenas. The details of the review and the deadline are subject to conferral between the FDIC-R and Crowe.

Third, by June 29, 2018, the FDIC-R shall upload the unredacted deposition transcripts and the transcript of Owens's deposition under seal and *ex parte*, and highlight in yellow the parts that were redacted so the Court can conduct an *in camera* review.

Fourth, by July 13, 2018, the FDIC-R shall file, under seal and *ex parte*, the settlement negotiations and communications leading up to the two settlement agreements that have been provided to Crowe.

Finally, by July 16, 2018, the FDIC-R shall to produce to Crowe communications and documents related to potential claims against third parties that are *not* related to settlement, negotiations, or compromise to the extent they exist, unless the FDIC-R believes that the records are protected by another privilege, in which case the FDIC-R must provide a privilege log to Crowe by the same deadline.

In order to allow the parties to review this Opinion and confer as necessary, the status hearing of June 25, 2018 is reset to July 10, 2018 at 10:30 a.m.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 25, 2018